## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00920-SBP

A.C.,

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

---

## OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

Plaintiff A.C.[1] applied for Supplemental Security Income, or "SSI," under the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-83c. An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled under the SSA's definition and that he has the capacity to perform a variety of unskilled jobs that exist in the national economy.

The Appeals Council denied Plaintiff's Request for Review, thereby leaving the ALJ's decision final and subject to judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). The court finds that oral argument would not materially assist in its determination of the appeal. After reviewing the parties' briefs, ECF No. 10 (Plaintiff's Brief) and ECF No. 11 (Defendant's Brief),[2] and the administrative record, the court **AFFIRMS** the ALJ's decision.

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Plaintiff did not file a reply brief.

**BACKGROUND**

Plaintiff raises one issue on appeal:

> The residual functional capacity[3] is not supported by substantial evidence as it sets forth no limitation to address [Plaintiff's] mental capacity deficiency caused by his severe impairment of developmental dyslexia, as found by the ALJ. [Plaintiff] seeks an order of remand with instructions for the ALJ to reconsider the RFC and the Step Five determination.[4]

Plaintiff's Brief at 1. To evaluate this issue, the court begins by summarizing the evidence before

---

[3] Residual functional capacity, often abbreviated as "RFC," is an individual's ability to do physical and mental work activities on a sustained basis despite limitations from the individual's impairments. *See* 20 C.F.R. § 416.945(a)(3).

[4] The Social Security Administration ("Administration") uses a five-step sequential process for reviewing adult-disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i)-(v). The five-step process requires the ALJ to consider whether a claimant (1) engaged in substantial gainful activity during the alleged period of disability; (2) has an impairment or combination of impairments that is "severe"; (3) has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926); (4) has the residual functional capacity to perform the requirements of his past relevant work; and (5) has the capacity to do any other work considering his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Between steps three and four of the sequential evaluation, an ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof through step four; the Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

In childhood disability cases, a three-step sequential evaluation process is employed: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or combination of impairments that is severe; and (3) whether the child's impairment meets or medically equals an impairment in the listings found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functions in terms of six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

the ALJ on which she based her determination that Plaintiff is not disabled. *See* Administrative

Record ("AR") at 15-36 (ALJ's decision and index of supporting exhibits).

## I.      Evidence before the ALJ

The ALJ conducted a hearing on July 20, 2021, following the denial of Plaintiff's

application for SSI. *Id.* 15. Notwithstanding Plaintiff's emphasis on development dyslexia[5] in

this appeal, Plaintiff's primary focus at the hearing was on a spinal injury he sustained on July

27, 2017, when he was fifteen. *Id.* 41. At the hearing, the only questions Plaintiff's attorney

asked him related to the spinal injury. *Id.* 44-52. A vocational expert retained by the

Administration also testified at the hearing and opined that there were jobs in the national

economy Plaintiff was able to perform. *Id.* 52-56. In addition to the evidence elicited at the

hearing, the record evidence before the ALJ consisted of extensive documentation[6] including, as

relevant here, evidence concerning Plaintiff's childhood diagnosis of dyslexia and information

about his reading ability.

*Initial determination of Plaintiff's claim.* Plaintiff, who was born in June 2002, applied

for SSI on April 9, 2019, when he was still a minor. The initial evaluation of his application was

evaluated by Disability Determination Services ("DDS"),[7] the State agency that processes social

security disability claims. *Id.* 57-73 (1/27/2020 Disability Determination of "Not Disabled").

---

[5] The court uses the terms "developmental dyslexia" and "dyslexia" interchangeably throughout this order.

[6] The majority of the records Plaintiff placed before the reviewers at the initial and reconsideration levels of the claim-evaluation process concerned medical encounters related to his spinal injury. *See, e.g.*, AR 316-325, 334-1071, 1427-1563, 1692-1733, 1740-1821, 1903-1912, 1914-2577, 2932-2950, 2969-3039.

[7] "Most Social Security disability claims are initially processed through a network of local Social Security Administration (SSA) field offices and State agencies (usually called Disability Determination Services or DDSs)." *See* Disability Determination Process (ssa.gov).

As relevant to the issue before the court in this appeal, the State reviewers, Pamela McKenzie, M.D., and James J. Wanstrath, Ph.D., noted Plaintiff's report of dyslexia, *id.* 66, and his diagnoses of "developmental dyslexia" and a "specific reading disability." *Id.* 68. The reviewers also considered information concerning the manifestation of those diagnoses in Plaintiff's daily life. According to one report in April 2018, although Plaintiff had "difficulty w/reading fluency," Plaintiff also "performs well in school." *Id.* 68. Plaintiff had an individualized education plan for reading fluency and comprehension, but he "regularly stated he [d]id not need help during intervention" and "rarely needs information clarified or retaught." *Id.*

Also before the reviewers[8] was information showing that, while Plaintiff's scores on standardized tests spanned the range from low to average to "high average," *id.* 1830-1832, the teachers with whom he interacted on a daily basis spoke positively about his performance. *Id.* 1845-1846 (recounting comments including that "he's understanding all of the content and increasing his knowledge," he's "killing it in science," he has a 95% average in his health class, and he "has a drive to learn more than required").[9] By May 2019 Plaintiff had been evaluated at school and determined to be "*on track in obtaining college ready skills in Reading* and Math and his scores in Writing and Language are beginning to approach basic foundational skills to be college ready." *Id.* 1868 (emphasis added); *see also id.* 1870 (noting that Plaintiff had expressed a desire to work in engineering, a goal his school found "realistic and attainable"). By January 2020, shortly before Plaintiff's high school graduation, his special education teacher rated him in the domain of "acquiring and using information" as having only "slight" difficulty with reading

---

[8] The reviewers at both the initial and reconsideration levels considered the full scope of medical records available at the time. *See* AR 22. The ALJ considered additional medical records that had accumulated since the review at the reconsideration level. *Id.* 22-23.

[9] Plaintiff's "biggest problem," according to one teacher, was "that he has missed so much school due to back issues/doctor visits." AR 1845.

and math, and no problems in all other areas. *Id.* 240 (comment that Plaintiff functioned independently in class and "regularly stated he did not need help during intervention time").

The two State-level reviewers at the initial level ultimately concluded that Plaintiff had "slight problems" in the domain of acquiring and using information. *Id.* 69 (noting that Plaintiff had an individualized education plan for reading fluency and comprehension but that he had not used alternative work settings, did not need help during interventions, and rarely needed information clarified or retaught). A complete evaluation of all domains, though, showed that Plaintiff's "medically determinable impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listing[s]."[10] *Id.* 70 (report signed by McKenzie and Wanstrath in January 2020). In finding that Plaintiff was not disabled, the reviewers noted that Plaintiff's "physical and mental impairments cause him certain limitations," but that "he is still able to maintain most normal daily activities and his condition does not cause marked and severe functional limitations." *Id.* 71.

***Reconsideration of Plaintiff's claim.*** In connection with Plaintiff's request for reconsideration of the denial of benefits at the initial level, the Administration obtained three additional evaluations by medical professionals. Two reviewers—John Genrich, M.D., and Cathy Word-Allen, Ph.D.—were tasked with reconsidering the childhood disability aspect of Plaintiff's claim. Because Plaintiff had reached the age of eighteen while his reconsideration request was pending, Dr. Word-Allen also evaluated Plaintiff's psychological functioning as an adult, and Paul H. Barrett, Jr., M.D., medically assessed Plaintiff as an adult.

---

[10] The purpose of the "listings" is to describe impairment that the Administration "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. For children, it describes impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a).

Dr. Genrich recognized in his findings of fact and analysis of the evidence that Plaintiff had a childhood diagnosis of dyslexia, along with an individualized education plan for reading fluency and comprehension at his high school. *Id.* 85-86. But Dr. Genrich also took into account the fact that Plaintiff declined help during interventions and continued to report at school that he rarely need information clarified or retaught. *Id.* Considering this information about Plaintiff's reading abilities, along with the other evidence before him, *id.* 85-88, Dr. Genrich concluded on reconsideration that Plaintiff had a "learning disorder" impairment that was categorized as "severe," but that he continued to have "less than marked" limitations in the domain of acquiring and using information and once again "did not meet/equal or functionally equal the listings." *Id.* 88-90 (9/29/2020 childhood evaluation by Genrich); *see also id.* at 89 (noting in the domain one evaluation that Plaintiff had only "slight problems" with "reading fluency [and] comprehension" and "[r]eports rarely needs information clarified or retaught").

In evaluating the six mandatory domains of functioning at the childhood level, Dr. Word-Allen, the second evaluator at the childhood reconsideration level, agreed that Plaintiff had "slight problems, has [an individualized education plan] for reading fluency, comprehension and math calculation," and further observed that there were "no changes or new conditions" upon reconsideration. *Id.* 90. Dr. Word-Allen concluded that Plaintiff "[d]oes not functionally equal the listings. The child's medically determinable impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings[.]" *Id.*

Dr. Word-Allen also conducted a review of Plaintiff as an adult. She utilized a "psychiatric review technique," or "PRT," and considered the "A," "B," and "C" "Criteria of the Listings, then provided this additional explanation:

> Claimant reports that he was diagnosed with depression after mental health eval in 2018. He notes that this was mild and not severe. Never had psychotherapy or other

mental health care. Never treated w/meds or admitted to mental health facility for treatment. Mental status exam was within normal limits and did not suggest significant neurocognitive limits.

*Id.* 92 (findings by Word-Allen) (medical acronyms replaced for ease of reading). Dr. Word-Allen further noted that "Psych not severe" for Plaintiff, and found no limitations on his ability to understand, remember, or apply information. *Id.* 92. She recommended no limitations for Plaintiff, as an adult, for psychological reasons. *See id.* 91-92.

Dr. Barrett, who conducted the adult-disability review at the reconsideration level, concluded that Plaintiff could perform "light work," including jobs such as a machine operator and mail clerk. *Id.* 94-96, 98 (Barrett review). Dr. Barrett found that Plaintiff had some "exertional" and "postural" limitations, *id.* 94, but he identified no other limitations for Plaintiff, including dyslexia or any other limitations based on Plaintiff's mental capacity. *Id.* 94-95.

Along with these five reviewers (McKenzie, Wanstrath, Genrich, Word-Allen, and Barrett), the Administration contracted with a physician, Kerry Kamer, D.O., to conduct an in-person functional evaluation of Plaintiff. Dr. Kamer concluded that Plaintiff had no functional limitations. *Id.* 2959 (report of 9/19/2020 functional evaluation).[11] Dr. Kamer noted that Plaintiff's "[i]nsight into illness suggested magnified perception of illness," but she found no suggestion of "significant neurocognitive limitations at this time." *Id.* At the time of the examination, Plaintiff noted that he had been diagnosed with depression, which he described as "mild, not severe," *id.* 2954, but there is no indication in the report that Plaintiff mentioned

---

[11] Specifically, Dr. Kamer found (1) Plaintiff required no limitations on sitting, standing, or walking during "a normal 8-hour workday"; (2) he should be able to "carry at least 15-30 pounds" during a normal workday; (3) he should be able to bend, stoop, squat, crouch, and crawl "frequently during a normal 8-hour workday"; (4) he had no limitations on "reaching, pushing, pulling, handling, grasping, fingering, and/or feeling"; (5) he needed no assistive devices; and (6) he had "no visual, communicative, or other workplace environmental limitations." AR 2959.

dyslexia or any other neurological or mental health disorder to the evaluator. *See id.* 2954-2960.

The reconsideration process, including the input of the aforementioned evaluators, again resulted in a determination that Plaintiff was not disabled. *Id.* 96. Plaintiff then requested a hearing before an ALJ, which was conducted on July 20, 2021. *Id.* 15.

## II.    **The ALJ's decision**

On August 30, 2021, the ALJ issued a written decision in accordance with the Commissioner's multi-step evaluation processes for evaluating childhood- and adult-disability claims. The ALJ followed the three-step sequential evaluation for a minor under 20 C.F.R. § 416.924 for the period before Plaintiff turned eighteen, *id.* 19-20, and the five-step sequential process for evaluating adult-disability claims under 20 C.F.R. § 416.920(a)(4) for the period after Plaintiff turned eighteen. AR 20-30. The court summarizes these analyses, in turn.

***The ALJ's childhood-disability evaluation.*** In conducting the childhood-disability evaluation, the ALJ concluded at step one—"whether the child is engaged in substantial gainful activity"—that Plaintiff had "not engaged in substantial gainful activity since the date the application was filed." *Id.* 19 ¶ 2. At step two—"whether the child has an impairment or combination of impairments that is severe"—the ALJ found that Plaintiff had several "severe" impairments, including developmental dyslexia. *Id.* 20 ¶ 3. The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Put another way, a "severe" impairment means an impairment that is something more than a "slight abnormality." *See* 20 C.F.R. § 416.924(c) ("If . . . your impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, we will find that you do not have a severe impairment(s) and are, therefore, not disabled.").

At the third and final step of the childhood-disability analysis—"whether the child's impairment meets or medically equals an impairment in the listings"—the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1, Part A or B. AR 20 ¶¶ 4-6. In conducting the step-three analysis, the ALJ evaluated each of the six mandatory domains of functioning, and concluded that Plaintiff had "less than marked limitations" in each. *See id.* 24-28; *see also* 20 C.F.R. § 416.926a(d) (to functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain).

The ALJ detailed the extensive evidence she considered in reaching these conclusions, which included evidence related to Plaintiff's reading ability. *See* AR 21-24. The ALJ considered the opinions of the medical experts with whom the Administration had contracted, including Dr. Kamer, the "State agency reviewers" (Drs. McKenzie and Wanstrath), and Drs. Genrich, Word-Allen, and Barrett at the reconsideration level. *Id.* 21-22. After considering the entire record, including records that post-dated these evaluations, *id.* 21-23, the ALJ determined that the findings at the reconsideration level were more consistent with the record evidence:

> Physically, [the reviewers at the reconsideration level] find limitations to light work, with less than marked mental limitations, which is well supported by the claimant's updated treatment record. While the mental assessment gives "less than marked" limitations in interacting with others, and the undersigned finds that his mental impairments are not severe, this is not inconsistent. Non-severe mental impairments would result in "less than marked" limitations. The findings at the reconsideration level are persuasive, and adopted. Dr. Kamer's assessment is similarly consistent and persuasive.

*Id.* 24.

With regard to Plaintiff's reading ability specifically, the ALJ pointed to information

indicating that Plaintiff had, in high school, "requir[ed] the use of an app and computer programs to handle reading and writing lessons," *id.* 21, but the ALJ further observed that the record evidence showed Plaintiff's reading fluency improved as his high school years progressed:

> In terms of consistency with the overall record, the extended record shows that as a child, in school in 2018, the claimant qualified for an individualized education plan in reading fluency, reading comprehension, and math calculation, for thirty minutes of direct service time once a month. *However, by 2020, the claimant was functioning independently in classroom, and was reportedly only displaying slight problems in reading* and math.

*Id.* 22 (discussing the State agency reviewers' conclusions that Plaintiff had "less than marked limitations in acquiring and using information," and finding that this conclusion "was supported by reference to reports by the claimant's teacher"—i.e., the statement regarding "only slight problems in reading and math") (emphasis added); *see also id.* 23 (discussing record evidence showing that, from January 2020 to January 2021, Plaintiff "maintained good performance in school with only slight limitations noted by his teacher"). The ALJ observed that statements provided by Plaintiff's teachers, while "not medical opinions" requiring a "persuasiveness analysis," were nonetheless "valuable evidence, as they serve as the most direct observations of how the claimant spends his time during a third of his day." *Id.* 28; *see also* 20 C.F.R. § 404.1513(a)(4) (authorizing evidence from nonmedical sources about any issue in your claim. We may receive evidence nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records."); 20 C.F.R. § 416.913(a)(4) (same). Therefore, "this evidence, while not an opinion [from a medical expert], is still persuasive." *Id.* The record reflects, however, that the medical experts also took these opinions into account. *See id.* 69, 89, 90.

Based on these findings, the ALJ concluded that Plaintiff was not disabled prior to

attaining age 18." *Id.* Plaintiff does not appeal this decision or otherwise allege any flaw in the ALJ's childhood-disability evaluation.

*The ALJ's adult-disability evaluation.* As for the adult-disability aspect of the evaluation, at step one—whether Plaintiff has engaged in substantial gainful activity during the alleged period of disability—the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since the date the application was filed." *Id.* 19 ¶ 2.

At step two—whether Plaintiff has an impairment or combination of impairments that is "severe"—the ALJ found that "[s]ince attaining age 18, the claimant has continued to have a severe impairment or combination of impairments." *Id.* 28 ¶ 8. The ALJ did not separately list those continuing "severe impairments"—i.e., impairments that are something more than a "slight abnormality," 20 C.F.R. § 416.924(c)—but the childhood impairments the ALJ had previously identified were "mild lumbar spondylosis and degenerative disc disease with radiculopathy and cervicalgia; and developmental dyslexia." AR 21 ¶ 3; *see also id.* 28 ¶ 7 (noting that Plaintiff "has not developed any new impairment or impairments since attaining age 18"). After analyzing the extensive record evidence, including evidence concerning Plaintiff's reading ability, *see generally id.* 21-22, 24, the ALJ concluded at step three of the adult-disability analysis that, "since attaining age 18, the claimant has not had an impairment of combination of impairments that meets or medically equals the criteria of an impairment" listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* 28 ¶ 9.

Prior to reaching step four—whether Plaintiff has the residual functional capacity to perform the requirements of his past relevant work—the ALJ assessed Plaintiff's residual functional capacity and found him capable of light work:

> [S]ince attaining age 18, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift and/or carry twenty pounds; stand and or walk about six hours in an eight-hour workday; sit more than six hours on a sustained basis in an eight hour workday; frequently climb ramps, stairs, ladders, scaffolds, and ropes; and frequently stoop, kneel crouch, and crawl.

AR 20-21 ¶ 5 and reiterated at 28 ¶ 10. In establishing Plaintiff's residual functional capacity, the ALJ extensively documented and evaluated the evidence before her, including Plaintiff's voluminous medical record[12]; the opinions of the expert reviewers who were contracted with the Administration, referenced above; and the evidence concerning Plaintiff's performance in school in general and his reading fluency specifically—described as only a "slight problem" by the end of his high school career. *Id.* 21-24. The ALJ carefully evaluated the opinions of each medical reviewer retained by the Administration, as well as the viewpoints of Plaintiff's teachers, concerning his reading capacity.

After determining Plaintiff's residual functional capacity, the ALJ turned next to step four of the adult-disability analysis, finding that Plaintiff has no past relevant work. *Id.* ¶ 28. However, at the fifth and final step of the adult-disability analysis, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," based on his "age, education, work experience, and residual functional capacity." *Id.* 29 ¶ 15, 30. Taking into account the record evidence, including testimony from the Administration's vocational expert, the ALJ determined that Plaintiff could perform a variety of jobs: copy machine operator, office helper, mail clerk, copy examiner, document preparer, and touch-up inspector. *Id.* 29-30 (noting the existence of tens of thousands of jobs in each of these

---

[12] Those medical records showed that Plaintiff "did not have much significant medical treatment" as an adult. AR 22.

categories). Based on the totality of the record evidence, the ALJ found that Plaintiff was not under a "disability" as an adult, as defined by the Administration, from the day he attained the age of eighteen through the date of the ALJ's decision, and denied Plaintiff's application for benefits. *Id.* 30.

That denial prompted Plaintiff's request to the Administration's Appeals Counsel, which denied the request on March 17, 2022. *Id.* 1-6. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 416.1481. This appeal followed.

## STANDARD OF REVIEW

This court engages in a circumscribed review of the Commissioner's decision. In social security disability cases, judicial review is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quotation omitted); *see generally* 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. --, 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South, LLC v. Roswell*, 547 U.S. 293, 301 (2015)). In applying the substantial-evidence standard

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* (cleaned up); *Noreja*, 952 F.3d at 1178 ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

In making the substantial-evidence determination, this court "may 'neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). The court "may not 'displace the agen[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)); *see also Zoltanski*, 372 F.3d at 1200 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal citation omitted). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "[C]ourts are to treat factual findings supported by substantial evidence as 'conclusive.'" *Noreja*, 952 F.3d at 1179; *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

In addition, this court's review is guided by the Tenth Circuit's application of the harmless error doctrine to social security disability cases. *See Allen v. Barnhardt*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x. 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

On appeal, Plaintiff claims that the ALJ's determination of his residual functional capacity is not supported by substantial evidence because it does not include a "limitation to address [his] mental capacity deficiency caused by his severe impairment of developmental dyslexia, as found by the ALJ." Plaintiff's Brief at 1. This court respectfully disagrees and finds, for the reasons that follow, that the ALJ's decision is supported by substantial evidence. In addition, to the extent there may be any error in the ALJ's analysis—and this court perceives none—such error was harmless.

### I.    The residual functional capacity analysis is supported by substantial evidence.

The ALJ concluded the impairments that limited Plaintiff's residual functional capacity as an adult were limitations of a physical, not mental, nature. Since turning eighteen, Plaintiff "has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)," subject to certain physical limitations: "the claimant can lift and/or carry twenty pounds; stand and/or walk about six hours in an eight-hour workday; sit more than six hours on a sustained basis in an eight hour workday; frequently climb ramps, stairs, ladders, scaffolds, and ropes; and frequently stoop, kneel, crouch, and crawl." AR 20-21 ¶ 5.

Plaintiff ascribes error in the ALJ's alleged failure to consider his developmental dyslexia in assessing his residual functional capacity as an adult. He contends that the ALJ "terminat[ed] her evaluation or consideration of this impairment [of developmental dyslexia] when evaluating the adult disability claim," and that she "arbitrarily concluded that all of those limitations [from dyslexia] ceased as of . . . the day Plaintiff attained age eighteen." Plaintiff's Brief at 7. Reduced to its essence, Plaintiff's argument rests on the presumption that, simply because the ALJ found that Plaintiff's developmental dyslexia constituted a "severe" impairment as a child she was thus

bound to find that it continued to impair him as an adult. The court is unpersuaded by this argument, which is contradicted by the plain language of the ALJ's decision showing that she in fact considered Plaintiff's reading ability in evaluating his residual functional capacity.

The ALJ began her analysis of Plaintiff's residual functional capacity by emphasizing that she "has considered *all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929. The [ALJ] has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927." AR 21 (emphasis added); *see also id.* 16 ("After reviewing *all of the evidence*, the undersigned Administrative Law Judge concludes the claimant has not been disabled . . .") (emphasis added). It is the practice for courts in the Tenth Circuit "to take the ALJ at [her] word" when she "indicates [s]he has considered all the evidence." *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (quoting *Wall*, 561 F.3d at 1070); *see also Grede v. Astrue*, 443 F. App'x 323, 326 (10th Cir. 2011) (affirming the ALJ's residual functional capacity analysis because "he stated that he had considered all of [the claimant's] symptoms and the medical evidence"). Likewise here, the court takes the ALJ at her word that she considered all of the evidence before her, including evidence concerning Plaintiff's reading fluency. The record provides ample support for the court doing so.

To begin, the ALJ's analysis of Plaintiff's residual functional capacity is comprehensive and clearly delineates the evidence she considered in reaching her conclusions. AR 21-24. The ALJ described in detail the information she gleaned from a careful review of the record, with a particular focus on the opinions of the six medical experts retained by the Administration. She assessed the supportability and consistency of these "opinions and prior administrative findings." *Id.* 24; *see also id.* 21-24 (evaluating opinions of Genrich, Word-Allen, Barrett, Kamer, and the

"State agency reviewers," i.e., McKenzie and Wanstrath); *see also, e.g.*, *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) ("'It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions,' including the opinions of state agency medical consultants.") (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (emphasis in original); 20 C.F.R. § 404.1520c(c) ("We will articulate how we considered the medical opinions and prior administrative medical findings in your claim . . . ."); 20 C.F.R. § 416.920c(c) (same).[13] While the ALJ did not expressly announce, by means of a heading, that she was conducting a consistency or supportability analysis pursuant to the controlling regulations, the court is able to review the ALJ's analysis, follow her reasoning, and ascertain whether or not she applied the correct legal standards. "So long as the ALJ describes the analytical reasoning in question, he or she does not have to use certain magic words to preface that reasoning." *T.D.F. v. Kijakazi*, No. 22-cv-02145-MDB, 2023 WL 6249035, at *7 (D. Colo. Sept. 25, 2023).

Here, the court finds that the ALJ applied the correct legal standards and considered the medical opinion evidence before her in accordance with the operative regulations. AR 21-24 (making findings regarding whether the medical assessments were supported by and consistent with the record).[14] That evidence included information about Plaintiff's reading fluency. The

---

[13] The referenced regulations, promulgated by the Administration on March 27, 2017, govern the evaluation of opinions in Plaintiff's case. Under these regulations, "the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding." *Harris v. Saul*, No. 19-cv-03715-NRN, 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

[14] The court notes that the ALJ found a lack of consistency in *Plaintiff's* evidentiary presentation:

ALJ discussed the "well supported" medical opinion evidence showing that, even before Plaintiff formally reached adulthood, he demonstrated only "slight" problems in reading, for which he seldom used even the very minimal thirty minutes per month of assistance allotted by his high school individualized education plan, and the State agency reviewers' conclusions that Plaintiff had "less than marked limitations in acquiring and using information." *Id.* 22. As the ALJ further found, the record was devoid of evidence showing that Plaintiff sought treatment or assistance for *any* mental health or neurocognitive condition—including dyslexia—after 2019 and as of the date of the hearing, when he was an adult. *Id.* The court finds nothing in the record indicating that Plaintiff sought evaluation, instructional help, or counseling for dyslexia after he completed high school, and Plaintiff points to no such evidence.

The record thus contradicts Plaintiff's assertion that "the ALJ simply terminat[ed] her evaluation or consideration of this impairment [of dyslexia] when evaluating the adult disability claim," or that she "arbitrarily concluded that all [limitations associated with dyslexia] ceased of . . . the day Plaintiff attained age eighteen." Plaintiff's Brief at 7. The ALJ did not specifically use the word "dyslexia" in analyzing Plaintiff's residual functional capacity, *see* AR 21-24, but she clearly considered the impact of any limitations in Plaintiff's reading ability—"slight" though they were—in making the residual functional capacity determination. *Id.* 22. The court finds no legal defect in the ALJ's of Plaintiff's reading fluency merely because she did not

---

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment[.]

AR 21; *id.* 23 (finding that "claimant's allegations are not consistent with" the record, and that "[i]f the claimant was as limited as alleged either as a child or as an adult, he would probably have required far more significant treatment with far less palliative effect").

include the "magic word" dyslexia. *See T.D.F.*, 2023 WL 6249035, at *7.

Neither is there support for Plaintiff's contention that the ALJ somehow "misconstrued the medical opinion evidence" before her. Plaintiff's Brief at 7. To the contrary, the ALJ considered the opinions of all six medical experts in accordance with the regulations. AR at 22, 24. The ALJ's conclusion that the "slight" compromise attendant on Plaintiff's developmental dyslexia as a child did not continue into adulthood is backed by substantial evidence, including the findings of the medical and psychological consultants; the absence of evidence indicating that Plaintiff suffered from any mental limitations as an adult; and information from Plaintiff's teachers (relied on by the expert consultants and, in turn, by the ALJ) demonstrating that, even before he turned eighteen, Plaintiff exhibited only "slight" difficulty with reading, *id.* 240; "perform[ed] well in school" and "rarely" used his individualized education plan to seek help, *id.* 68; was "on track in obtaining college ready skills in Reading," *id.* 1868; and successfully graduated high school and then worked at a semi-skilled job as a medical scheduler,[15] which he left because of problems with his back and not because of any issues with reading comprehension or fluency. *Id.* 42-44 (Plaintiff's hearing testimony). Further supporting the ALJ's conclusion is the absence of record evidence documenting any deficits in Plaintiff's mental functioning. *Id.* 91 (finding by Dr. Word-Allen that Plaintiff's only impairments were a back disorder and a "non severe" impairment of depression); *id.* 94-95 (finding by Dr. Barrett

---

[15] The scheduler position that Plaintiff held is categorized as "SVP three," which is semi-skilled work. *See* Dictionary of Occupational Titles ("DOT") 237.367-010, available at <u>237.367-010 - APPOINTMENT CLERK (clerical) alternate titles: reception clerk - DOT Dictionary of Occupational Titles Job Description (occupationalinfo.org)</u>; *see also* <u>SSA - POMS: DI 25001.001 - Medical and Vocational Quick Reference Guide - 01/19/2023</u> ("Semi-skilled work requires some skills but does not require complex duties. Usually, Specific Vocational Preparation (SVP) of three or four as rated in the [Selected Characteristics of Occupations defined in the DOT.].").

that there were no limitations on Plaintiff's mental capacity); *id.* 2959 (finding by Dr. Kamer that Plaintiff had no neurocognitive limitations and a normal mental status evaluation).[16]

In order to override the ALJ's well-supported conclusions, Plaintiff would have this court reweigh the evidence before the ALJ and second-guess her judgment. This the court cannot do. *See, e.g.*, *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Rather, the court finds the evidence on which the ALJ relied more than sufficient for "a reasonable mind to accept as adequate to support [the ALJ's] conclusion" that Plaintiff's dyslexia no longer constituted a functional impairment as an adult. *See Biestek*, 139 S. Ct. at 1154. Having found that the ALJ's residual functional capacity analysis is supported by substantial evidence, the court declines to compel the Commissioner to reconsider that analysis or the ALJ's step-five determination that Plaintiff is "capable of making a successful adjustment to other work that exists in sufficient numbers in the national economy" and is therefore not disabled. *See* AR 30.

**II.     Any error in applying the paragraph B criteria or listing 12.11 was harmless.**

Plaintiff devotes a significant portion of his brief to the argument that the ALJ did not properly apply the "paragraph B criteria" for evaluating mental impairments (specifically, his

---

[16] Plaintiff questions the ALJ's reliance on the opinions of Drs. Word-Allen and Barrett, both of whom declined to find that Plaintiff's developmental dyslexia constituted an adult-level impairment, because these medical experts allegedly "understood" that they were only to consider his depression and were not "asked" to consider his dyslexia. Plaintiff's Brief at 9. The court finds nothing in the record suggesting that these medical professionals deemed their evaluation cabined in this manner, which would be at odds with the role of an independent medical consultant. As the ALJ found, the assessments of Drs. Word-Allen and Barrett— including the absence of any finding that Plaintiff was functionally limited by dyslexia as an adult—are amply supported by the record, as discussed throughout this order.

dyslexia) at steps two and three of the adult-disability analysis, and that the ALJ did not determine whether Plaintiff met or equaled listing 12.11 for neurodevelopmental disorders—the listing under which dyslexia, presumably, would fall. Plaintiff's Brief at 10-17. Given this focus, the court deems it appropriate to explain why these arguments do not undermine the court's conclusion that the ALJ's determination of Plaintiff's residual functional capacity—and, hence, her conclusion that Plaintiff is not disabled—is supported by substantial evidence.

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that are considered disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also* Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If Plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, the claimant has the burden at step three of demonstrating, through medical evidence, that her impairments "meet *all* of the specified medical criteria" contained in a particular listing." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. *Zebley*, 493 U.S. at 530.

Turning now to Plaintiff's argument that the ALJ erred in not discussing whether his dyslexia satisfied paragraph B, the court begins with the language of the decision itself. As the court's preceding analysis shows, the ALJ did evaluate evidence concerning Plaintiff's reading fluency in concluding that, as an adult, he had no severe mental impairments and no "impairment or combination of impairments that meets or medically equals a listed impairment." AR 20-22,

24. Second, while the decision does not specifically reference the paragraph B criteria, the ALJ

expressly adopted "[t]he findings at the reconsideration level," *id.* 24, and those findings

included the assessment of Plaintiff's adult impairments by Dr. Word-Allen, who analyzed the

"'B' Criteria of the Listings" and rated Plaintiff's degree of limitation with respect to each of the

paragraph B criteria. *Id.* 91-92 (assessing the paragraph B criteria in connection with the question

of whether Plaintiff met or medically equaled Listing 12.04 (depressive, bipolar and related

disorders)). Dr. Word-Allen determined that Plaintiff had no limitations in his ability to

"understand, remember, or apply information"; no limitations in his ability to interact with

others" no limitations in his ability to "concentrate, persist or maintain pace," and only a "mild"

limitation in his ability to "adapt or manage" himself. *Id.* 92.

     In light of this record, including the ALJ's express adoption of Dr. Word-Allen's analysis

and findings, the court finds that a consideration of the paragraph B criteria is integrated into the

ALJ's decision. To be sure, Dr. Word-Allen technically reviewed the paragraph B criteria in

connection with listing 12.04, which covers depression and related disorders, but the paragraph B

criteria for listing 12.04 and listing 12.11 are exactly the same. *See* 20 C.F.R., Pt. 404, Subpt. P.,

App. 1 § 12.00A(2)(b) ("When we refer to 'paragraph B criteria" or "area[s] of mental

functioning" in the introductory text of this body system, *we mean the criteria in paragraph B of

every listing except 12.05*.") (emphasis added). The court is unpersuaded that the analysis of the

identical paragraph B factors was required under the heading of a specific listing, particularly

where the ALJ several times referred to Plaintiff's reading ability in considering whether he

functionally equaled a listing. AR 21-22.

     Given these circumstances, Plaintiff's argument that the ALJ (or Dr. Word-Allen) was

obliged to specifically consider listing 12.11 would elevate form over substance. That omission

does not detract from the substantial evidence supporting the ALJ's conclusion that Plaintiff has no impairment or combination of impairments that meets or medically equals a listing. *See Jensen v. Berryhill*, No. 2:14-CV-00892-DB-DBP, 2018 WL 1617865, at *4 (D. Utah Mar. 5, 2018) ("[T]he court rejects any suggestion that the ALJ had an absolute duty to expressly mention Listing 112.11 when finding Plaintiff did not equal a listing. As an initial matter, Plaintiff fails to offer any authority to support his argument that the ALJ had a duty to explicitly reference each listing related to a claimant's severe impairments. Moreover, Plaintiff's argument seeks to elevate form over substance. While the ALJ may not have specifically cited to Listing 112.11 when discussing whether Plaintiff met any listing, the ALJ several times referred to Plaintiff's ADHD while considering whether Plaintiff functionally equaled a listing."), *report and recommendation adopted*, No. 2:14-CV-892-DB-DBP, 2018 WL 1626103 (D. Utah Mar. 30, 2018).

Based on the record here, the court can readily ascertain that the ALJ was aware of Plaintiff's dyslexia and considered whether his reading fluency may have continued to be impaired as an adult. The ALJ decided it was not, and her finding is backed by substantial evidence. But assuming for the sake of argument that the ALJ's omission of an express reference to the paragraph B factors (or listing 12.11) constitutes error, the court finds that error is harmless. Tenth Circuit precedent counsels against "remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005); *see also Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (noting lack of harm where record lacked evidence to suggest claimant met a listing the ALJ did not address). Here, Plaintiff cites no evidence to suggest he meets the necessary criteria to be considered

disabled under listing 12.11, and this court has located none.[17]

First, Plaintiff cites no evidence to suggest that he meets the required criteria under paragraph A. There is no documentation in the record (medical or otherwise) showing that Plaintiff suffers from "[f]requent distractibility, difficulty sustaining attention, or difficulty organizing tasks," "[h]yperactive and impulsive behavior," "recurrent motor movements or vocalizations," or "*significant* difficulties learning and using academic skills." Rather, the evidence confirmed that any compromise to Plaintiff reading (even before he reached adulthood) was but "slight," that he did not need the assistance provided by his individualized education plan, and that it was "realistic and attainable" for him to consider pursuing college-level studies in engineering. *See, e.g.*, AR 21-22, 69, 240, 1845-46, 1868, 1890. Plaintiff went on to graduate from high school and, after he turned eighteen, to work as a medical scheduler until problems with his back prompted him to quit. *Id.* 42-43.

Second, Plaintiff cites no evidence to suggest that he meets the paragraph B criteria. He simply asserts that "if the ALJ evaluated Paragraph B criteria, she would have observed that Plaintiff's limitations in his ability to acquire and use information, attend and complete tasks, and

---

[17] While Plaintiff's argument focuses exclusively on the B criteria, to meet listing 12.11 Plaintiff must satisfy *both* the A and B criteria. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A2. Paragraph A for listing 12.11 requires medical documentation of "1. One or both of the following: a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being 'driven by a motor'). 2. Significant difficulties learning and using academic skills; or 3. Recurrent motor movement or vocalization." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.11. And as also discussed above, the paragraph B criteria for listing 12.11 are the same as those for listing 12.04: ((1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself). These criteria are only met if the mental impairments "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A2b.

interact/relate with others are sufficiently translated into adult limitations involving [the paragraph B criteria]." Plaintiff's Brief at 10. But the fatal flaw in Plaintiff's logic is that he points to *no evidence* to support the proposition that any childhood deficits necessarily "translated into adult limitations," and the record is entirely to the contrary. That dearth of evidence is further emphasized by Dr. Word-Allen's conclusion that Plaintiff had no limitations under the first three paragraph B factors (understanding, remembering, or applying information; interacting with others; and maintaining concentration, persistence, or pace) and only a mild limitation under the fourth (his ability to "adapt or manage" himself."). AR 92.[18] Nothing in the record suggests a different conclusion would be reached were this court to order the ALJ to evaluate those identical factors yet again.

Based on the medical records and the evaluations by the expert reviewers, the ALJ found that "[t]he claimant has not developed any new impairment or impairments since attaining age 18," and noted that by the time he turned 18, Plaintiff's mental impairments had actually *improved*. *Id.* 28; *see also id.* 22-23 (finding that "by 2020, the claimant was functioning independently in [the] classroom, and was reportedly only displaying slight problems in reading and math," and that he had "maintained good performance in school with only slight limitations noted by his teacher"). Plaintiff does not contend that other evidence in the record purportedly contradicts the ALJ's assessment, but even if some such evidence might be found, this court is not empowered to reweigh it in a manner favoring Plaintiff or to substitute its judgment for that of the Commissioner. *See, e.g.*, *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013); *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (in circumstances where evidence

---

[18] At the time Dr. Word-Allen conducted the paragraph B analysis, she was aware of Plaintiff's individualized education plan in high school and his "slight" problems with reading. *See* AR 90.

could support a contrary finding, the court "may not displace the agency's choice between two fairly conflicting views," even if the court may have "made a different choice had the matter been before it *de novo*").

Put simply, there is no record support for the conclusion that Plaintiff's mental impairments worsened from childhood to adulthood, such that a reasonable administrative factfinder could conclude that—seemingly overnight—Plaintiff's condition had devolved to meet or medically equal a listing, including listing 12.11. The court therefore finds no harmful error concerning the analysis of the paragraph B criteria or in the fact that the ALJ's decision does not separately discuss listing 12.11.

**III.    The ALJ's decision that Plaintiff can perform a variety of unskilled SVP 2 jobs in the national economy is supported by substantial evidence.**

The court concludes by emphasizing a critical, if obvious, point: even if the ALJ somehow erred in her consideration of Plaintiff's reading abilities, the error is harmless because the jobs she found that Plaintiff can perform—all of which are classified as "SVP 2" or "unskilled"—are not reading-focused. AR 29-30.[19] Notably, these job require *less* skill than the SVP 3, or semi-skilled, scheduler job the record shows Plaintiff had successfully performed. *Cf.*

---

[19] *See* DOT <u>207.685-014 - PHOTOCOPYING-MACHINE OPERATOR (clerical) - DOT Dictionary of Occupational Titles Job Description (occupationalinfo.org)</u>; DOT <u>239.567-010 - OFFICE HELPER (clerical) - DOT Dictionary of Occupational Titles Job Description (occupationalinfo.org)</u>; DOT <u>209.687-026 - MAIL CLERK (clerical) alternate titles: mailroom clerk; mail sorter; postal clerk - DOT Dictionary of Occupational Titles Job Description (occupationalinfo.org)</u>; DOT <u>979.687-026 - TYPE-COPY EXAMINER (machinery mfg.) - DOT Dictionary of Occupational Titles Job Description (occupationalinfo.org)</u>; DOT <u>249.587-018 - DOCUMENT PREPARER, MICROFILMING (business ser.) - DOT Dictionary of Occupational Titles Job Description (occupationalinfo.org)</u>; DOT <u>726.684-110 - TOUCH-UP SCREENER, PRINTED CIRCUIT BOARD ASSEMBLY (electron. comp.) - DOT Dictionary of Occupational Titles Job Description (occupationalinfo.org)</u>.

20 C.F.R. § 404.1568(b) ("Unskilled work is work *which needs little or no judgment* to do simple duties that can be learned on the job in a short period of time.") (emphasis added).

There is substantial evidence in the record showing that Plaintiff has no mental limitations (including any limitation related to dyslexia) that would prevent him from performing the requirements of the occupations identified by the ALJ. Indeed, the court discerns no evidence to the contrary. While each of the identified jobs may require "*certain capacities* to read," Plaintiff's Brief at 18 (emphasis added), that fact shows no error in the ALJ's determination that Plaintiff has the requisite reading capacity to perform these unskilled jobs.[20] To repeat a point raised throughout this order, the evidence before the ALJ shows that, even before Plaintiff turned eighteen, his reading skills were but slightly compromised, and that this slight deficiency did not prevent him from graduating from high school and working in a more skilled position than any identified in the ALJ's decision. Plaintiff raised no dispute as to this evidence below, nor does he point to any reason to question the evidence on appeal. Respectfully, Plaintiff's assertion that "there is no evidence that [he] is capable of performing the level of reading necessary to be successful in the jobs" identified by the ALJ, *see* Plaintiff's Brief at 18, is wholly belied by the record.

In short, there is no evidence in the record "about any particular limitations in performing

---

[20] A specific example serves to emphasize the point that Plaintiff's particular reading capacity, as reflected in the record, exceeded any capacity required. A copy machine operator

> [t]ends duplicating machine to reproduce handwritten or typewritten matter: Places original copy on glass plate in machine. Places blank paper on loading tray. Sets control switch for number of copies. Presses button to start machine which transfers image of original copy onto blank paper by photographic and static electricity process. May clean and repair machine. May receive payment for duplicate copies. Important variables may be indicated by trade name of machine tended.

DOT 207.685-014.

work at an unskilled level that [Plaintiff] experienced as a result of" of dyslexia—or any other

type of neurocognitive or mental health disorder. *See Hernandez v. Colvin*, 567 F. App'x 576,

582-83 (10th Cir. 2014) (rejecting the plaintiff's "argument that the limitation to 'unskilled'

work did not adequately address his learning disorder," and finding that where the plaintiff had

previously performed semi-skilled work, "the implications of any learning disorder in terms of

work capacity . . . is accommodated with the unskilled parameter provided in [his] residual

functional capacity"). The ALJ's decision that Plaintiff can perform the unskilled jobs identified

in the decision is supported by substantial evidence. Any error stemming from the ALJ's alleged

failure to consider Plaintiff's "mental capacity deficiency caused by his severe impairment of

developmental dyslexia," Plaintiff's Brief at 1, is harmless.

## CONCLUSION

For the foregoing reasons, the court finds that the Commissioner's final decision is

supported by substantial evidence in the administrative record and applies the correct legal

standards. Consequently, the court finds no grounds warranting reversal or remand. Accordingly,

the court **AFFIRMS** the ALJ's determination that Plaintiff is not disabled. The Clerk of Court

shall enter judgment in the Commissioner's favor and close this civil action.

DATED: December 6, 2023                    BY THE COURT:

_____

Susan Prose
United States Magistrate Judge